UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sofia Rios,<br><br>          Plaintiffs,<br><br>     v.<br><br>Magellan HRSC, Inc.,<br><br>          Defendant. | No. 2:22-cv-01219-KJM-AC<br><br>ORDER |

   Plaintiff Sofia Rios moves to remand this case to the Sacramento County Superior Court. She argues the defendant, Magellan HRCS, Inc., has not shown that more than $5 million is in controversy, which would mean this court lacks jurisdiction under the Class Action Fairness Act. As explained in this order, Magellan has carried its burden to show the court has jurisdiction. It has relied on employment records and has made reasonable assumptions about the amount in controversy based on Rios's allegations. The court denies the motion to remand.

**I.     BACKGROUND**

   Magellan is an Ohio-based healthcare management company. Compl. ¶ 1, Jenkins Decl. Ex. A, ECF No. 1-1; Not. Removal ¶ 21, ECF No. 1. Rios works for Magellan in California as a customer service associate. Compl. ¶ 13. She alleges the company did not pay her overtime wages when she worked overtime, calculated her sick leave incorrectly, prevented her from taking breaks to eat, and did not reimburse her business expenses, all in violation of California

1    law.  *See id.* ¶¶ 13–32.  She seeks damages, statutory penalties, and attorneys' fees, among other

2    relief.  *See id.* at 17–18 (Prayer for Relief).  She also alleges Magellan's policies were uniform

3    and applied to all of its similarly situated employees, so she seeks to represent these employees in

4    a class action.  *See id.* ¶¶ 33–40.

5        Rios originally filed this case in Sacramento County Superior Court.  *See generally id.*

6    Magellan removed the case to this court under the Class Action Fairness Act.  *See generally* Not.

7    Removal.  That act gives U.S. district courts original jurisdiction over class actions if (1) the

8    proposed class has at least 100 members, (2) the amount in controversy is at least $5 million, and

9    (3) the parties are minimally diverse.  *See* 28 U.S.C. § 1332(d).  Magellan submitted a declaration

10   from its vice president, who is familiar with the company's human resources and payroll records.

11   *See generally* Philpott Decl., ECF No. 1-2.  She confirmed Magellan had more than 100

12   employees for the relevant period.  *Id.* ¶ 2.  Publicly available government records confirm

13   Magellan is an Ohio corporation whose principal place of business is in Maryland.  *See* Jenkins

14   Decl. Ex. D, ECF No. 1-1.  As a result, the amount-in-controversy requirement is the only

15   contested condition of this court's jurisdiction under the Class Action Fairness Act.  Rios moves

16   to remand, arguing Magellan has not satisfied that condition.  *See generally* Mot., ECF No. 4.

17   The matter is now fully briefed and the court submitted it without oral argument.  *See generally*

18   Opp'n, ECF No. 5; Reply, ECF No. 7, Min. Order, ECF No. 6.

19   **II.   DISCUSSION**

20       When a defendant removes a case to federal court, it must file "a short and plain statement

21   of the grounds for removal," including, if necessary, an allegation that the amount in controversy

22   is above the jurisdictional threshold.  28 U.S.C. § 1446(a); *see also Dart Cherokee Basin*

23   *Operating Co., LLC v. Owens*, 574 U.S. 81, 87–88 (2014).  The amount in controversy is "an

24   estimate of the total amount in dispute."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927

25   (9th Cir. 2019) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)).  It

26   is not a "prospective assessment of defendant's liability."  *Id.* (quoting *Lewis*, 627 F.3d at 400).

27   Nor does it depend on the likelihood that a specific dollar amount will be awarded.  *See Chavez v.*

*JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). If a plaintiff could recover more than $5 million, then more than $5 million is in controversy. *Arias*, 936 F.3d at 927.

A plaintiff can contest a defendant's allegations about the amount in controversy by making a facial attack or a factual attack. *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [jurisdictional] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). "A factual attack, by contrast, 'contests the truth of the [jurisdictional] allegations, usually by introducing evidence outside the pleadings.'" *Id.* (quoting *Leite*, 749 F.3d at 1121). But outside evidence is not necessary; a factual attack can also rest on a plaintiff's "reasoned argument" challenging "the truth of the defendant's jurisdictional allegations" and explaining why those assumptions are "not supported by evidence." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). Rios relies on a factual attack. She argues, for example, that Magellan has made unreasonable assumptions about how frequently she could prove employees missed meal breaks and how many business expenses Magellan did not reimburse. *See* Mot. at 4–5, 8–9.

When a plaintiff mounts a factual attack in a proposed class action, the defendant must show the amount in controversy is more likely to exceed the $5 million threshold than fall short of it. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Dart Cherokee*, 574 U.S. at 88–89). The defendant need not predict the "eventual award with one hundred percent accuracy." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004)). It may cite evidence and "rely on reasonable assumptions." *Harris*, 980 F.3d at 701. For example, a defendant might adopt or take a cue from the plaintiff's own allegations. *See Arias*, 936 F.3d at 926–27. But it may not rest on "speculation" or "conjecture." *Ibarra*, 775 F.3d at 1197. In response, the plaintiff may also submit evidence, and it may seek to undermine the defendant's assumptions. *See Harris*, 980 F.3d at 699. The district court then considers the parties' evidence, "weigh[s] the reasonableness of the removing party's assumptions," and decides whether the defendant has discharged its obligation to show more than $5 million is in dispute. *Id.* at 700.

1    Magellan begins with Rios's claim that the company denied meal breaks to its employees.
2    Rios alleges employees "were often unable to take timely and uninterrupted 30-minute first meal
3    periods" and "were not always allowed and permitted to take a mandated second meal period."
4    Compl. ¶ 25. She alleges these "meal period policies" were "uniform" for all class members "at
5    all relevant times." *Id.* ¶¶ 25, 26, 36. Based on these allegations, Magellan assumes Rios will
6    attempt to prove each member of the proposed class was forced to skip at least two breaks per
7    week, if not more. Twice per week is a reasonable interpretation of "often but not always." *Cf.,*
8    *e.g.*, *Arias*, 936 F.3d at 926 (finding it reasonable to assume "routinely" meant once per week or
9    more); *Cabrera v. S. Valley Almond Co., LLC*, No. 21-00748, 2021 WL 5937585, at *8 (E.D. Cal.
10   Dec. 16, 2021) (finding it reasonable to assume "at times" and "on occasion" meant one hour per
11   week or more). Magellan then counted the employees it had during the relevant period, added
12   together all of weeks they worked, and calculated their average hourly salary. *See* Philpott Decl.
13   ¶¶ 4–7, ECF No. 5-2. It then checked its records and found that about 97 percent of its employees
14   had worked full time during the relevant period. *See id.* ¶ 8. Multiplying these figures together
15   resulted in Magellan's estimating a potential liability of almost $2.4 million. *See* Opp'n at 13.[1]
16   This was a reasonable conclusion to draw from the complaint and the company's records.

17   Magellan also relies on Rios's claim that the company did not pay employees all wages
18   due after their employment ended, the sixth claim in her complaint. *See* Compl. ¶¶ 67–72. As
19   explained in the previous paragraph, it is reasonable to assume Rios will attempt to prove all of
20   the proposed class members missed at least one meal period, which meant at least some "meal
21   premiums" had gone unpaid if any of these people left the company. *See id.* ¶ 32. Rios alleges
22   Magellan is liable for the maximum possible penalty for wages left unpaid at the close of an
23   employee's tenure: thirty days' wages. *Id.* ¶ 72 (citing Cal. Lab. Code §§ 201, 202, 203).
24   Magellan's records showed that 493 people ended their employment during the relevant period,

---

[1] 51,178 workweeks × 97% rate of full-time work × 2 days' missed meals per week × $23.77 per hour per missed meal break = $2.36 million.

and these employees' average hourly wage was $24.11. Philpott Decl. ¶¶ 12–13. This means Rios is seeking almost $2.9 million in connection with her sixth claim.[2]

As a result, based on Rios's claims for missed meal breaks and late wage penalties, at least $5.2 million is in dispute—above the required $5 million threshold. It is not necessary to consider Rios's other claims or her request for attorneys' fees.

**III.   CONCLUSION**

The motion to remand (ECF No. 4) is **denied**.

IT IS SO ORDERED.

DATED: October 5, 2022.

CHIEF UNITED STATES DISTRICT JUDGE

---

[2] 493 employees × $24.11 per hour × 30 days × 8 hours per day = $2.85 million.